In re GEORGETOWN PARK APART-
MENTS, LTD., a California limit-
ed partnership, Debtor.

FIRST CITY NATIONAL BANK
OF AUSTIN, COLLECTING
BANK, N.A., Appellant,

v.

GEORGETOWN PARK APARTMENTS,
LTD., a California limited
partnership, Appellee.

Bankruptcy No. 88–9901 LM 11.
BAP No. SC–91–1912–RPO.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on June 24, 1992.

Decided Aug. 21, 1992.

Richard W. Esterkin, Los Angeles, Cal., for First City Nat. Bank of Austin.

Dorothy A. Johnson, San Diego, Cal., for Georgetown Park Apartments.

Before RUSSELL, PERRIS, and OLLASON, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The bankruptcy court denied a creditor's motion to recuse. The creditor appeals. We affirm.

## I. FACTS

The Chapter 11 debtor/appellee Georgetown Park Apartments ("Georgetown Park"), is a California limited partnership owning a single real estate asset. First City National Bank of Austin, Collecting Bank, N.A. ("First City"), a secured creditor, filed a motion for relief from the automatic stay to foreclose on its first lien on the Georgetown Park asset. Georgetown Park filed an objection to First City's claim. The bankruptcy court consolidated the two contested matters.

That court denied First City's motion for relief from stay and held in favor of Georgetown Park on its counterclaim against First City. The order was entered on March 8, 1991.

First City filed a motion for reconsideration and obtained a hearing date of April 4, 1991. Prior to the hearing, Georgetown Park filed a motion for allowance of attorney's fees incurred by its attorneys, Jennings, Engstrand & Henrikson ("JEH"), in prosecuting Georgetown Park's claim against First City. The hearing on the allowance of fees was set for the same date as the First City motion for reconsideration.

Two days prior to the hearing, on April 2, 1991, the presiding bankruptcy judge, the Honorable Louise D. Malugen, (now Judge Adler), disclosed in a letter to counsel that she had employed JEH as her personal counsel on matters unrelated to the Georgetown Park case. In that letter, Judge Malugen stated that even though she believed that she could fairly and impartially adjudicate the matters, she would transfer the motion for award of attorney's fees to another judge to avoid the appearance of impropriety.

At the hearing on the motion for reconsideration, First City requested that Judge Malugen recuse herself from hearing any other matters in the bankruptcy case. The court declined to consider an oral motion, but agreed to consider a written motion if First City chose to pursue the matter. The hearing on First City's motion for reconsideration was continued until the motion for recusal could be heard. On April 29, 1991 First City filed its motion for recusal.

On July 10, 1991, prior to the hearing on the motion for recusal, Georgetown Park attempted to cure the basis for disqualification by substituting the law firm of Page, Polin, Busch & Boatwright ("PPB & B") as their counsel. As Georgetown Park's proposed substitute general bankruptcy counsel, PPB & B filed an opposition to the motion.

At the August 1, 1991 hearing on the motion for recusal, Judge Malugen advised counsel that she had requested a private letter ruling from the Council on Judicial Ethics for the Judicial Conference of the United States. The private letter ruling corroborated her feelings that recusal was

not appropriate. Judge Malugen denied the recusal motion, finding that concerns about the appearance of impropriety had been cured by the substitution of PPB & B as Georgetown Park's Counsel. First City appeals. We AFFIRM.

## II. ISSUE

Whether the bankruptcy court abused its discretion in denying a motion to recuse itself from continuing to hear and determine matters in this bankruptcy case.

## III. STANDARD OF REVIEW

The denial of a recusal motion is reviewed for an abuse of discretion. *Sewer Alert Committee v. Pierce County,* 791 F.2d 796, 798 (9th Cir.1986); *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986); *United States v. Hamilton,* 792 F.2d 837, 839 (9th Cir.1986).

Findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are reviewed *de novo. In re Deer Park,* 136 B.R. 815, 817 (9th Cir.BAP 1992); *In re Holm,* 931 F.2d 620, 622 (9th Cir.1991); *In re Acequia, Inc.,* 787 F.2d 1352, 1357 (9th Cir.1986); Federal Rule of Bankruptcy Procedure 8013.

## IV. DISCUSSION

A. *Recusal is required where the impartiality of a federal judge might reasonably be questioned.*

**§ 455. Disqualification of justice, judge, or magistrate.**

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a).

The standard for recusal is an objective one: "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson,* 718 F.2d 315, 321 (9th Cir.1983); *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 714 (9th Cir.1990); *see:* Note, *Disqualification of Judges and Justices in the Federal Courts,* 86 Harv. L.Rev. 736, 745 (1973). "[A] judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1111 (5th Cir.1980). As one court stated:

The statutory standard puts to the judge a question about the objective state of the legal and lay culture. The court must consider whether an astute observer in either culture would conclude that the relation between judge and lawyer (a) is very much out of the ordinary course, and (b) presents a potential for actual impropriety if the worst implications are realized.

*United States v. Murphy,* 768 F.2d 1518, 1537 (7th Cir.1985).

The purpose of the statute is "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 860, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988); *See,* S.Rep. No. 419, 93d Cong., 2d Sess. 3, at 5 (1973); H.R.Rep. No. 1453, 93d Cong., 2d Sess. 3, at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351.

B. *The withdrawal of JEH as counsel and the transfer of fee approval to another judge effectively cured any reasonable appearance of impartiality.*

Prior to her employment of JEH, no reasonable basis for questioning Judge Malugen's impartiality existed. At the time of the hearings and the decisions on the claim objection and relief from stay motion, she had not yet employed JEH as her personal counsel. Shortly after disclosure that JEH had been employed, Georgetown Park obtained substitute counsel. No substantive decisions were made by Judge Malugen until after substitute counsel was in place.

### 1. Withdrawal of JEH as cure.

Once JEH had withdrawn, Judge Malugen's personal counsel no longer represented any party in the litigation before her. The substitution of counsel effective-

ly cured the initial appearance of partiality. *See: S.J. Groves & Sons Co. v. International Brotherhood of Teamsters,* 581 F.2d 1241, 1248 (7th Cir.1978) (where the judge's brother was a partner in the firm representing a party before the judge, once the attorneys causing the appearance of partiality had withdrawn from the case the situation was cured and recusal was not required).

First City argues, however, that the withdrawal of JEH from the pending case does not cure the appearance of impropriety because JEH retains a pecuniary interest in the pending litigation. The pecuniary interest alleged here is JEH's final fee determination. First City makes the strained argument that "Judge Malugen's rulings in the bankruptcy case will have a direct impact on the success of the reorganization and, as a result, on the ultimate allowance of JEH's fees, and on whether the estate will have the funds to pay those fees." We disagree.

First, Judge Malugen stated at the hearing on the recusal motion that she will not hear any further matters concerning JEH's fees. This measure effectively removes any direct influence of Judge Malugen's rulings on JEH's fees.

Second, the inference that Judge Malugen might rule on non-fee matters in a particular manner desiring that the reorganization would succeed, in the hope that another judge would independently award JEH an increased fee, is at best speculative. Judge Malugen's potential influence on JEH's pecuniary interest would be highly remote.

The applicable standard is whether "the judge's impartiality might *reasonably* be questioned." *United States v. Nelson,* 718 F.2d at 321 (emphasis ours). The remoteness of any potential effect that Judge Malugen might have does not reasonably call into question her impartiality. Nor would an objective observer conclude that this arrangement presents a reasonable potential for impropriety.

On the contrary, the measures taken by Judge Malugen reflect a diligent effort to avoid partiality: she fully disclosed to the parties that a possible conflict existed; she sought a private letter ruling from the Council on Judicial Ethics for the Judicial Conference of the United States which did not recommend recusal; and she transferred any JEH fee application matters to another judge. Given these measures, it is doubtful that if Judge Malugen continued to hear the other matters, public confidence in the integrity of the judicial process would be diminished. A reasonable person would not conclude that Judge Malugen should recuse herself.

## V. CONCLUSION

The withdrawal of JEH as counsel in this case and the transfer of all matters concerning JEH fees to another judge have effectively eliminated the source of the potential partiality. On the facts before us we conclude that Judge Malugen's denial of the motion to recuse was not an abuse of discretion. We AFFIRM.