**TRANSAMERICA CORPORATION and Transamerica Title Insurance Company, Plaintiff-Appellee,**

v.

**TRANSAMERICA BANCGROWTH CORPORATION, Defendant-Appellant.**

No. 78–2677.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1980.

Decided Sept. 11, 1980.

---

Joseph T. Tadano, Roush, Mori & Welsh, Phoenix, Ariz., for defendant-appellant.

Ronald Laurie, Townsend & Townsend, San Francisco, Cal., for plaintiff-appellee.

Before TRASK, ANDERSON and FARRIS, Circuit Judges.

TRASK, Circuit Judge:

On July 15, 1975, plaintiffs Transamerica Corporation, and Transamerica Title Insurance Company (hereinafter "Transamerica") filed their complaint for trademark infringement and unfair competition against Transamerica Bancgrowth Corporation (hereinafter "Bancgrowth") in the United States District Court for the District of Arizona, in Phoenix, Arizona. Jurisdiction in the district court was predicated on 28 U.S.C. §§ 1338(a) (trademarks), 1338(b) (unfair competition), and 1332 (diversity).

Factually, the complaint was based on Bancgrowth's unauthorized use of the Transamerica trade name and service mark as to which Transamerica claims exclusive rights in connection with the various services it renders. Transamerica sought relief in the form of an injunction against Bancgrowth's use of the Transamerica name and mark, an accounting for profits and damages, punitive damages, costs of suit and reasonable attorneys' fees.

On April 27, 1976, Transamerica filed an amended complaint naming appellant herein, Arthur S. Brooks (Brooks), doing business as "Trans-America of Arizona," as an additional defendant and seeking the same relief against Brooks as was sought against Bancgrowth in the complaint originally filed. Brooks and Bancgrowth filed their answers to the amended complaint on May 17, 1976, alleging among other things that Brooks had used the business name "Trans-America of Arizona" since 1959.

Immediately following a status conference on September 20, 1976, the district court issued an order setting January 31, 1977, as the date for close of discovery and submission of a stipulated form of pretrial order pursuant to Arizona Local Rule 42. The pretrial conference was scheduled for February 7, 1977. On January 19, 1977, about two weeks before the scheduled close of discovery, the defendants filed a motion for enlargement of time for discovery until March 31, 1977, approximately 60 days longer. The request for extension was supported by affidavit of counsel. The court thereupon vacated the order setting a pretrial hearing date until such time as all discovery was completed and counsel had

lodged a stipulated form of pretrial order in compliance with Local Rule 42 C.[1]

A flurry of depositions, requests for protective orders, and other legal strategems followed, until the district court entered a minute order dated April 11, 1977, continuing the date for completion of discovery until August 8, 1977, and rescheduling the pretrial conference to August 15, 1977. The order also emphasized that further delays would not be tolerated.

On April 14, 1978, Transamerica filed a motion for sanctions pursuant to Local Rule 42 E. It was based on Brooks' failure (a) to prepare in good faith for the pretrial conference, and (b) to have complied in good faith with the rules governing pretrial discovery procedures as required by the rule. In its motion, Transamerica requested sanctions in the form of the entry of judgment against defendants as authorized by subsection E of Rule 42.[2] At that hearing the following colloquy took place between Brooks' counsel, Mr. Tadano and the court:

The Court: Mr. Tadano, anything to say?

Mr. Tadano: Yes, I do. I attempted to schedule that thing on Wednesday.

The Court: Well why—Pretrials have been set three times. They've been continued for every reason under the sun, and yet, by your own response, you show up at the last pretrial—pre—meeting between the two of you to prepare a pretrial conference with, by your own admission, stacks of new documents you had never seen or produced before.

Mr. Tadano: Our client has an extremely haphazard method of keeping his records.

The Court: I think so too and I think the answer in this case is that the Answer is stricken, default is entered and plaintiffs may prepare a form of judgment in accordance with the prayer of the Complaint. That will be the Order.

C.T. Vol. V, pp. 9–10. Default judgment was entered against the defendant. An appeal was timely filed.

## I

Arizona District Court Rule 42 sets out the requirements for a stipulated form of pretrial order to be jointly prepared and submitted to the court in anticipation of the pretrial conference and provides in subsection E:

### E. COMPLIANCE

For failure of any counsel to appear at the pretrial conference, to participate therein in good faith, to prepare fully therefor, or to have complied in good faith with the rules governing pretrial discovery procedures, the pretrial Judge shall make such order as he deems appropriate, including, as to plaintiff or other claimant, dismissal of his claim or the reassignment of the case to a deferred position on the calendar; as to the defendant, judgment for the plaintiff or the taxation of costs then or subsequently incurred by plaintiff; or impose upon either counsel further sanctions, including sanctions for contempt of court.

■ 28 U.S.C. § 2071 and Rule 83 of the Federal Rules of Civil Procedure expressly empower district courts to adopt their own local court rules to cover areas not specifically covered by the federal rules. *See United States v. Hvass*, 355 U.S. 570, 78

---

1. The pertinent part of Local Rule 42 C is as follows:

    By the date fixed by the Clerk of the Court for full compliance with Local Rule 41 A and C, and upon the initiative of counsel for the plaintiff, counsel who will try the case for the parties and who are authorized to make binding stipulations will have met personally, discussed settlement, and will have prepared and filed with the Court, and exchanged with each other, proposed written pretrial order containing the following: . . .
    [The Rule then enumerates a number of specific factors to be included.]

2. The record adequately reflects that the district court considered lesser sanctions. The plaintiffs' motion for sanctions detailed a rather wide range of alternative sanctions for consideration by the district court.

S.Ct. 501, 2 L.Ed.2d 496 (1958); *United States v. Warren*, 601 F.2d 471 (9th Cir. 1979). Consequently, Local Rule 42 is valid and the sole question is whether it was properly enforced by the district court.

■■■ We begin by noting that the district court is in the best position to assess the circumstances and the degree to which its order was not complied with. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 947 (9th Cir. 1976). Consequently, the standard of review is not whether the court of appeals would as an original matter have imposed the sanction but whether the district court abused its discretion in so doing. *National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). There is no indication in the record that the appellant's failure to comply with Rule 42 was due to reasons beyond his control. In fact, appellant was amply warned by the district court that if he failed to comply with the Rule, sanctions would be forthcoming. Although default was the most severe sanction available, we will not substitute our judgment for that of the district court in the absence of any explanation for the defendant's failure to comply with the court's order. Entry of an order of default was therefore not an abuse of discretion. *See Anderson v. Air West, Inc.*, 542 F.2d 1090 (9th Cir. 1976).

The judgment of the district court is AFFIRMED.