110 F.3d 69
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, a
North Carolina corporation; Azstar Casualty
Company, an Arizona corporation,
Plaintiffs-Appellees,
v.
GREAT PLAINS CAPITAL CORPORATION, a Delaware corporation,
Defendant-Appellant.
OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, a
North Carolina corporation; Azstar Casualty
Company, an Arizona corporation,
Plaintiffs-Appellees,
v.
GREAT PLAINS CAPITAL CORPORATION, a Delaware corporation, Defendant,
and
Gennaro J. Orrico, husband; Colleen M. Orrico, wife,
Defendants-Appellants.
 Nos. 95-15951, 95-15952.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 15, 1996.*
Decided March 18, 1997.
 
 Appeal from the United States District Court for the District of Arizona, No. CV-92-01618-RCB; Robert C. Broomfield, District Judge, Presiding.
 D.Ariz. [Superseded by 96 F.3d 1451].
 AFFIRMED IN PART, REVERSED IN PART.
 Before: SNEED, NOONAN, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This is an appeal from a grant of summary judgment in favor of plaintiffs-appellees on their Arizona RICO and tort claims. Appellees are Occidental Fire & Casualty Co. ("Occidental") and AzStar Casualty Company ("AzStar"). Defendants-appellants are Great Plains Capital Corporation ("GPCC"); Gennaro J. Orrico, who, though not an officer or director of GPCC during the time period relevant to this lawsuit, allegedly controlled its operations; and Gennaro's wife, Colleen M. Orrico, who at the time owned 100% of GPCC's shares. Appellants challenge the district court's application of Arizona Local Rules 42(C) and 1.10(i); its treatment of the Orricos' affidavits; and its finding concerning the Orricos' liability as alter egos of GPCC. Appellees, in turn, have moved to supplement the record with new evidence. We have jurisdiction under 28 U.S.C. § 1291, and we now affirm in part and reverse in part.
 
 I.
 FACTS & PROCEEDINGS BELOW
 
 3
 This lawsuit arises out of the financial troubles experienced in late 1991 by a corporation not a party to this lawsuit--Allied General Agency, Inc. ("AGA") of Scottsdale, Arizona. AGA was a managing general insurance agency whose business was to sell insurance policies on behalf of various insurance companies, remitting collected premiums to those companies after deducting commissions and fees. AGA had standard agency agreements with, among others, Occidental, AzStar, and GPCC's wholly owned subsidiary, Great Plains Insurance Company ("GPIC").
 
 
 4
 In the fall of 1991, AGA fell behind in its remission of premiums to these companies. This debt posed problems for GPIC, which was itself experiencing financial difficulties. Neither Colleen nor her husband, Gennaro, were officers or directors of GPIC at the time, but appellees contend that Gennaro completely dominated and controlled both GPIC and GPCC.
 
 
 5
 In November 1991, Gennaro and GPCC's operating officers, Jeff Silver and James Severson, met with AGA's principals and entered into an agreement to purchase all of AGA's outstanding stock for one dollar. GPCC personnel notified AzStar and Occidental of the acquisition, and, according to appellees, assured them that AGA's obligations to them would be met. Although appellees' agreements allowed them to terminate the agency relationship upon AGA's acquisition by another company, both chose not to, allegedly in reliance on GPCC's assurances.
 
 
 6
 After the acquisition, GPCC relocated AGA's operations to Omaha, Nebraska, where they were supervised by Gennaro and his longtime business associate Cecil Kitchens. GPCC opened two bank accounts for AGA receipts, one for GPIC premiums, the other for premiums belonging to all other insurers doing business with AGA. The monies deposited in the latter account were used at least in part to pay the expenses of AGA and GPCC or GPIC. By the end of December, GPCC had received at least $1,676,205.96 in funds from Occidental policies, and $1,120,692.18 in funds from AzStar policies which it did not remit to those companies.
 
 
 7
 Occidental and AzStar sued GPCC and the Orricos in Arizona state court on January 10, 1992, charging violations of Arizona RICO, common law fraud, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, tortious interference with contract, and conversion. Silver and Severson then resigned, and Gennaro acquired GPCC's stock from Colleen for one dollar and appointed himself president of GPCC. On March 11, 1992, Gennaro filed on behalf of AGA a voluntary petition under Chapter 11 of the United States Bankruptcy Code, and on March 12, GPIC was liquidated at the request of the State of Nebraska. Occidental and AzStar subsequently removed their suit to federal court on the basis of its diversity jurisdiction. See 28 U.S.C. § 1332.
 
 
 8
 The Orricos were not cooperative during the district court proceedings. They neither participated in preparing the joint pretrial statement nor attended the pretrial conference; as a result, the district court entered an order under Arizona Local Rule 42(C), precluding them from offering evidence or testimony as a sanction for their lack of participation.
 
 
 9
 Plaintiffs moved for summary judgment in June 1994. Although defendants filed opposition papers, neither defendants nor their attorney appeared at the summary judgment hearing on December 5, 1994. The district court invoked Local Rule 1.10(i) to treat defendants' attorney's failure to appear at oral argument as a consent to the motion for summary judgment, granting the motion on that basis and upon consideration of the merits. Defendants timely appealed.[1]
 
 II.
 THE GRANT OF SUMMARY JUDGMENT
 
 10
 We review the district court's application of local court rules for an abuse of discretion. United States v. Real Property Located at Incline Village, 47 F.3d 1511, 1520 (9th Cir.1995), rev'd on other grounds by Degen v. United States, 116 S.Ct. 1777 (1996). We review de novo the district court's grant of summary judgment, applying the same standard as the district court under Fed.R.Civ.P. 56. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). That standard requires us to determine whether, viewing the evidence in the light most favorable to appellants, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 A. Application of Local Rule 42(C)
 
 11
 At the close of the May 2, 1994, pretrial conference, at which appellants failed to appear, the district court granted appellees' Local Rule 42 motion to preclude appellants "from calling witnesses or offering documentary evidence for their failure to participate in the preparation of the pretrial order." Appellants now argue that the district court erred in applying the rule, which was repealed on January 12, 1994, and that they should have been treated leniently because they were at the time without counsel. We disagree.
 
 
 12
 1. Rule 42 Was Properly Employed.
 
 
 13
 Under Arizona Local Rule 42(C), the parties to a lawsuit are required to cooperate in preparing a pretrial statement and to appear at the pretrial conference. Rule 42(E) further provides:
 
 
 14
 For failure of any counsel to appear at the pretrial conference, to participate therein in good faith, to prepare fully therefor, or to have complied in good faith with the rules governing pretrial discovery procedures, the pretrial Judge shall make such order as he or she deems appropriate, including ... as to the defendant, judgment for the plaintiff or the taxation of costs then or subsequently incurred by plaintiff; or impose upon either counsel further sanctions, including sanctions for contempt of court.
 
 
 15
 The District of Arizona adopted amended Rules of Practice on January 12, 1994, which repealed Rule 42 in its entirety. See General Order No. 227 (Jan. 12, 1994). These amendments "will apply to all cases filed as of January 12, 1994, and may apply to pending cases to the extent it is practical and fair." Id. (emphasis added). It is thus within the district court's discretion to decide whether to apply the amended rules to pending cases.
 
 
 16
 The court below properly exercised this discretion. This lawsuit was initially filed on January 10, 1992, and was removed to federal court in March. At a status conference on August 2, 1993, the court set a deadline for the proposed pretrial order of December 13, 1993. This deadline was later extended to January 31, 1994, and later again to February 14. The proposed pretrial order was submitted by plaintiffs alone on February 28, and the pretrial conference was held on May 2. This chronology indicates that preparation of the pretrial order was well underway when Rule 42 was repealed on January 12, 1994. We conclude that it was reasonable for the district court to proceed under the old rules.[2]
 
 
 17
 2. Appellants' Lack of Counsel Did Not Warrant Leniency.
 
 
 18
 We also conclude that the fact that appellants were without counsel of record at the time of the pretrial conference does not justify their total lack of participation. "[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir.1986). Although the Jacobsen court noted that "[w]e are generally more solicitous of the rights of pro se litigants, particularly when technical jurisdictional requirements are involved," id. at 1366 n. 10 (internal quotations omitted), that discussion concerned the pro se plaintiff's lack of compliance with the service requirements of Fed.R.Civ.P. 4. The rule violated here, however, is more than a mere technical pleading or procedural rule. Furthermore, the defendants here had notice of the rule by virtue of the court's orders setting deadlines for compliance with Rule 42(C).[3] Finally, although the defendants were in between lawyers, and thus temporarily proceeding pro se, they were a corporation and the owners of multiple companies, unlike the typical pro se litigant; therefore, their lack of counsel was less a matter of lack of resources than of choice. Leniency was not warranted.
 
 
 19
 3. The Preclusion Order Is a Bar to the Affidavits.
 
 
 20
 The district court later construed its Rule 42(C) preclusion order as a bar to appellants' submission of affidavits in opposition to plaintiffs' summary judgment motion. Appellants argue that the district court erred in so construing its order. Again, we disagree.
 
 
 21
 Only admissible evidence may be considered in deciding a motion for summary judgment. Fed.R.Civ.P. 56(e); Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1181 (9th Cir.1988). Appellants argue that Rule 56(e)'s "admissible evidence" clause refers only to "admissibility as determined by the rules of evidence." That argument, however, is precluded by this court's decision in Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363 (9th Cir.1992). In that case, the district court had excluded plaintiff's proffered expert testimony as a sanction for its previous destruction of evidence. On appeal, we held that the subsequent grant of summary judgment against plaintiff was proper because once the testimony was excluded, plaintiff "lacked the ability to put forward a prima facie case or to offer any admissible evidence creating a disputed material fact." Id. at 369. See also Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir.1990) ("Since the court ruled that Geiserman could not offer expert testimony at trial, he cannot use that expert witness's affidavit to oppose summary judgment."). Thus, evidence that is inadmissible because of a preclusion order may be excluded from consideration on a summary judgment motion.
 
 B. The Treatment of the Orricos' Affidavits
 
 22
 Although the district court held the Orricos' affidavits barred by its Rule 42 order, it did discuss the testimony in its summary judgment order, noting that "[e]ven if the court were to consider [the] affidavit testimony, its conclusion would not change." Appellants quarrel with that conclusion. They argue that the affidavits create a genuine factual issue as to (1) whether Orrico represented to appellees that they would be paid all funds due them; (2) how appellees' premiums were used once they were deposited in the Omaha account; and (3) whether Gennaro dominated and controlled GPCC and GPIC.
 
 
 23
 Gennaro's affidavit contains several general statements attempting to refute the evidence supporting appellees' summary judgment motion. Concerning the allegations of fraud, he states: "At no time did Affiant either individually or jointly with any other individual or entity enter into a plan or scheme to defraud either of the Plaintiffs of insurance premiums that were owed to them by AGA." Concerning his role in GPCC and GPIC, he states: "At no time did Affiant exercise dominion and control over either GPCC and/or GPIC." Concerning the use of the premiums, he states: "At no time did Affiant use funds in either account of these two (2) accounts for his own personal benefit." Colleen's affidavit is even more general.
 
 
 24
 These conclusory denials unaccompanied by any factual statements or evidence are insufficient to meet appellants' burden under Rule 56(e). See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) (object of R. 56(e) "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (nonmovants must produce some "significant probative evidence" tending to support their denials); Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir.1995) (affidavit containing conclusory assertions concerning discriminatory intent without facts to substantiate the claim insufficient to avoid summary judgment), cert. denied, 116 S.Ct. 711 (1996); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").
 
 
 25
 Appellants also argue that the district court effectively acknowledged the sufficiency of the affidavits by relying on similar affidavits previously submitted by the Orricos in support of their successful motion to vacate a default judgment. This argument ignores the more lenient standard applied at this earlier stage of litigation. In seeking to vacate the default judgment, appellants had only to establish a prima facie defense, i.e. to "allege specific facts that, if proven at trial would constitute a defense to the claim asserted." 6 James W. Moore, Moore's Federal Practice p 55.10 at 55-73. Even if the affidavits sufficiently alleged the facts required to establish a prima facie defense, they did not present sufficient supporting facts to survive summary judgment.[4]
 
 
 26
 C. Application of Local Rule 1.10(i) Was Not an Abuse of Discretion.
 
 
 27
 Under Arizona Local Rule 1.10(i), "if counsel for any party fails to appear at the time and place assigned for oral argument, such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." Appellants argue that the district court abused its discretion by basing its grant of summary judgment solely on this rule, and by failing to warn appellants that it would invoke Rule 1.10(i). Neither argument has merit.
 
 
 28
 First, we disagree that the court based its decision solely on its authority under Rule 1.10(i). In its summary judgment order, the district court stated:
 
 
 29
 [P]ursuant to Local Rule 1.10(i), the court hereby grants plaintiffs' motions for summary judgment in their entirety.
 
 
 30
 While Rule 1.10(i) allows the court to grant plaintiffs' motion summarily, which the court expressly elects to do, the court will nevertheless discuss the merits of this lawsuit. The court does so because, as more fully set forth below, plaintiffs would be entitled to summary judgment even if the court had chosen not to invoke Rule 1.10(i).
 
 
 31
 The remainder of the court's 27-page order discusses the merits of the several claims. The court's order clearly embodied alternative rulings, a conclusion it subsequently clarified in its order denying defendants' motion for a new trial.
 
 
 32
 Second, the cases on which appellants rely support the approach taken by the district court. In this circuit, a district court may not grant summary judgment based solely on the nonmovant's failure to comply with a local rule; rather, it must at least determine that the movant has met its initial burden under Fed.R.Civ.P. 56. See Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir.1993) (holding that district court abused its discretion in granting summary judgment on counterclaim solely on basis of Local Rule 11(i) violation, but affirming on ground that counterclaim was frivolous).[5] Here, the court properly decided that the plaintiffs met their burden under Rule 56, at least with respect to defendants GPCC and Gennaro.
 
 
 33
 Moreover, the court's failure to warn appellants of the potential consequences of failing to appear for oral argument is not dispositive. Cf. Brydges v. Lewis, 18 F.3d 651, 652-53 (9th Cir.1994) (upholding grant of summary judgment where court did warn of consequences of failing to respond to summary judgment motion); Henry, 983 F.2d at 950 (affirming grant of summary judgment on the merits despite lack of indication that district court warned nonmovant before granting summary judgment based on failure to comply with local rule).
 
 
 34
 We conclude, therefore, that the district court did not abuse its discretion in applying Local Rule 1.10(i) to GPCC and Gennaro. The grant of summary judgment was proper with respect to those two defendants.
 
 III.
 THE ALTER EGO FINDING
 
 35
 The district court found that Colleen and Gennaro Orrico were alter egos of one another and of GPCC. Since the district court relied on this legal conclusion to support its grant of summary judgment, we review this finding de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 36
 Under the law of Delaware, GPCC's state of incorporation,[6] a court may hold other individuals or entities liable as alter egos for a corporation's debts where those individuals (1) completely dominate and control the corporation, and (2) use the corporate form to perpetrate fraud or something like it. Mobil Oil Corp. v. Linear Films, Inc., 718 F.Supp. 260, 267-68 (D.Del.1989); see also Harper v. Delaware Valley Broadcasters, Inc., 743 F.Supp. 1076, 1085-86 (D.Del.1990) ("An overall element of injustice or unfairness must always be present.") (internal quotations omitted), aff'd, 932 F.2d 959 (3d Cir.1991).
 
 
 37
 As to Gennaro, the district court found that he exercised near total domination and control of GPCC and of AGA, and that he operated all his businesses to maximize his interest. We conclude that this finding is amply supported by appellees' evidence. The second part of the alter ego test is satisfied because not holding Gennaro liable as an alter ego would promote an injustice, as appellees likely will not recover their premiums from GPCC itself. See Gatecliff, 821 P.2d at 729 (second prong of alter ego test is satisfied where observance of the corporate form could deny plaintiffs recovery). The record supports the district court's finding that Gennaro is individually liable on appellees' claims as an alter ego of GPCC.
 
 
 38
 However, viewing the evidence in the light most favorable to Colleen, we hold that there is a genuine issue of material fact as to whether Colleen actually dominated and controlled the corporation. Therefore, we reverse the district court's grant of summary judgment against Colleen, and remand to allow the case against Colleen to proceed to trial.
 
 IV.
 APPELLEES' MOTION TO SUPPLEMENT THE RECORD
 
 39
 Appellees have filed a motion to supplement the record on appeal with newly-discovered deposition testimony of Gennaro Orrico taken in an unrelated lawsuit. Appellees contend that this testimony directly contradicts statements Gennaro made in his summary judgment affidavit. In the deposition, Gennaro states unequivocally that he was the controlling person in all his companies, including GPCC and GPIC.
 
 
 40
 The federal courts of appeal have the inherent equitable power to supplement the record. Dickerson v. State of Alabama, 667 F.2d 1364, 1367 n. 5 (11th Cir.), cert. denied, 459 U.S. 878 (1982). However, we should exercise that discretion "[o]nly in extraordinary situations." Barilla v. Ervin, 886 F.2d 1514, 1521 n. 7 (9th Cir.1989). Because the judgment against Gennaro and GPCC may be sustained on the existing record, we find the new evidence to be unnecessary. Appellee's motion is therefore denied.
 
 
 41
 The grant of summary judgment is AFFIRMED in part and REVERSED in part. The motion to supplement the record is DENIED. The case is remanded to the district court for further proceedings consistent with this disposition. Defendants/appellants GPCC and Gennaro shall bear the costs for proceedings to date. The district court shall determine allocation of costs on remand.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The appeals are technically from the district court's denial of defendants' subsequent Fed.R.Civ.P. 59(e) motions for a new trial. We treat them as appeals from the summary judgment since that is clearly the parties' intent and the parties have argued the relevant issues in their briefs. See Medrano v. City of Los Angeles, 973 F.2d 1499, 1502-03 (9th Cir.1992), cert. denied, 508 U.S. 940 (1993)
 
 
 [2]
 Before its repeal, the validity of Local Rule 42 was consistently affirmed. See, e.g., Transamerica Corp. v. Transamerica Bancgrowth Corp., 627 F.2d 963, 966 (9th Cir.1980) (upholding entry of default judgment against defendant for noncompliance with Rule 42). Because the Rule 42 preclusion was proper, we do not reach appellees' argument that the preclusion order may be affirmed on the alternative bases of the district court's inherent powers or Fed.R.Civ.P. 16(f) and 37
 
 
 [3]
 We also find it significant that, as appellees point out, appellants' attorney Phillip Vogel served his notice of appearance on behalf of GPCC and the Orricos shortly after the pretrial conference, yet made no attempt either to request a reconsideration of the court's preclusion order or to supplement the pretrial order
 
 
 [4]
 Appellants' additional argument that the district court engaged in an impermissible weighing of the evidence is without merit; some weighing is inevitable in determining whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249
 
 
 [5]
 See also Real Property, 47 F.3d at 1520 (default summary judgment proper unless movant's paper are insufficient to support the motion or on their face reveal a genuine issue of material fact); Marshall v. Gates, 44 F.3d 722, 725 (9th Cir.1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet burden of demonstrating absence of genuine issue for trial); Cristobal v. Siegel, 26 F.3d 1488, 1496 (9th Cir.1994) (reversing an award of summary judgment based solely on a local rule that was mandatory, rather than discretionary, where the district court had given the nonmovant no warning)
 
 
 [6]
 We need not decide whether Delaware law or, as the district court thought, Arizona law applies, because both states apply the same standard. See Gatecliff v. Great Republic Life Ins. Co., 821 P.2d 725, 725 (Ariz.1991)